[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12722
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-00180-CAP-AJB-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus


TERRY LEWIS BURSTON,
a.k.a. Terry Burston,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 14, 2014)

Before CARNES, Chief Judge, MARCUS and HULL, Circuit Judges.

PER CURIAM:

Terry Burston appeals his 188-month sentence for one count of aiding and abetting a bank robbery. See 18 U.S.C. §§ 2, 2113(a), (d). He contends that his sentence is procedurally and substantively unreasonable.

I.

Burston and Reginald Strozier robbed a branch of SunTrust Bank in Atlanta on May 16, 2012. At the time Burston was still technically in federal custody serving an earlier sentence. In 1996 he was sentenced to 262 months in prison for postal robbery and bank robbery. That sentence was later amended to 226 months, and in January 2012 Burston was transferred from federal prison to a halfway house in Atlanta to finish the last few months of his sentence. On the morning of the robbery, Burston was just a month away from finishing that sentence.

Burston and Strozier entered the bank through the rear door and ordered everyone to get on the floor. Their plan was for Strozier to get the cash while Burston watched the customers. Strozier walked up to one of the tellers, held out a pillowcase, and ordered her to hand over all the large bills in the teller drawers. While Strozier was getting the money, Burston held what appeared to be a pistol[1] and ordered the customers to stay on the floor. He slapped one customer on the back of the head and shouted, "Get down or I will kill you." When Strozier

---

[1] On the bank's surveillance video, the object appears to be a pistol. Burston later claimed it was a BB gun.

2

finished getting the money, the two ran out of the bank and into the woods nearby, making off with $18,508.00.

The robbers planned to change clothes in the woods so that they would not match the descriptions given by witnesses, then slip out and make their way home unnoticed. But Atlanta police had responded quickly to the bank's 911 call and were patrolling the area. An officer spotted the two exiting the woods, and a chase ensued. Though the robbers split up, the police caught both men after short foot chases.

A federal grand jury indicted Burston and Strozier in June 2012, charging each with one count of aiding and abetting a bank robbery. See 18 U.S.C. §§ 2, 2113(a), (d). The evidence against them was overwhelming. The bank's surveillance cameras captured the entire robbery, and the police caught both men with bags that held cash from the bank and the clothes they wore during the robbery. Burston pleaded guilty in March 2013. At his plea hearing, Burston claimed that the weapon he held during the robbery was a BB gun.

Burston's presentence investigation report recommended a base offense level of 20. See U.S.S.G. § 2B3.1(a). It recommended four enhancements to his offense level. First, it gave Burston a 2-level enhancement because he took property from a financial institution. See id. § 2B3.1(b)(1). Next it added a 1-level enhancement because the bank's loss was over $10,000 but less than $50,000. See

3

id. § 2B3.1(b)(7)(B).  Then it recommended a 4-level enhancement because "a dangerous weapon was otherwise used" during the robbery.  See id. § 2B3.1(b)(2)(D).  Finally, the PSR gave Burston a 2-level enhancement because he physically restrained the bank's customers to help facilitate the commission of the robbery.  See id. § 2B3.l(b)(4)(B).  Those four enhancements were offset by a 2-level reduction for acceptance of responsibility.  See id. § 3E1.1(a).  The adjustments resulted in a total offense level of 27.  The PSR then reviewed Burston's lengthy criminal history and determined that the guidelines placed him in criminal history category III.  Burston's offense level, combined with his criminal history category, gave him a guidelines range of 87 to 108 months in prison.

Neither Burston nor the government was satisfied with the PSR's recommendations.  Burston thought the PSR's guidelines range was too high and objected to two of the enhancements.  He challenged the 4-level enhancement for having "otherwise used" a dangerous weapon because none of the witnesses said he used the gun.  He argued that he should instead receive a 3-level enhancement for having "brandished or possessed" a dangerous weapon.  See id. § 2B3.1(b)(2)(E).  He also challenged the 2-level enhancement for having "physically restrained" the bank's customers.  He argued that the customers were bystanders, not victims, and that he did not physically restrain them because he

4

merely ordered them to get down on the floor.  The government, on the other hand, thought the PSR's recommended guidelines range was too low.  The government filed a motion for an upward departure to criminal history category VI, see U.S.S.G. § 4A1.3(a), as well as an upward variance under the 18 U.S.C. § 3553(a) factors.  It supported its request for a departure by arguing that Burston's criminal history category of III substantially underrepresented his criminal record and that he was likely to recidivate.  And it supported its request for a variance by pointing out that, among other things, an upward variance was necessary to make Burston's sentence commensurate with the sentence that Strozier was likely to receive given Strozier's guidelines range of 188 to 235 months.[2]  Burston objected to the motion and urged the court to conclude that his guidelines range adequately reflected his criminal history.

The sentence hearing did not go well for Burston.  First, the district court overruled both of his objections.  The court determined that the 4-level enhancement for using a dangerous weapon was appropriate because Burston

---

[2] Strozier's guidelines range was much higher than Burston's because Strozier had a much higher criminal history category — despite their similar criminal records.  The two primary reasons were:  (1) Burston had served a long prison term during which many of his prior convictions stopped counting toward his criminal history because of the 15-year limitation imposed by U.S.S.G. § 4A1.2(e)(1); and (2) Strozier's prior convictions qualified him for a career offender enhancement because all his prior convictions were prosecuted separately, whereas Burston did not qualify for that enhancement because his earlier bank and postal robberies had been consolidated into one trial and a single sentencing, see U.S.S.G. § 4A1.2(a)(2)(B) (providing that sentences imposed on the same day, for offenses not separated by an intervening arrest, will count as a single sentence when calculating a defendant's criminal history category).

implicitly threatened the customers with the gun when he ordered them to the ground.  The court also concluded that the 2-level enhancement for physically restraining the customers was warranted because the customers felt compelled to comply with Burston's order to stay on the ground.  Then, the district court turned to the government's motion for an upward departure.  It concluded that category III underrepresented Burston's criminal history because:  (1) he had a high likelihood of recidivism; and (2) the primary reason he was in category III was that he had been in prison most of the last seventeen years, which reduced the accrual of criminal history points, see U.S.S.G. § 4A1.2(e)(1) (imposing a 15-year limitation on prior convictions when calculating a defendant's criminal history score).  The upward departure to criminal history category VI, combined with Burston's total offense level of 27, gave him a new guidelines range of 130 to 162 months.

Finally, the district court turned to the § 3553(a) sentencing factors.  It concluded that an upward variance was warranted and sentenced Burston to 188 months in prison — the same sentence Strozier had received.  The court based its sentence on all of the § 3553(a) factors, but it put special emphasis on the circumstances of the offense, Burston's history and characteristics, and the need to deter future crimes and protect the public by taking Burston "out of circulation." The court made it clear that it would have varied upward and sentenced Burston to 188 months regardless of the upward departure or the recommended guidelines

6

range.  It said:  "I also state for the record that if I had not made the departure . . . I would still make the variance up to the sentence imposed. . . . I think honestly for what he's done in this and his record, anything less than 20 years is almost a gift."

## II.

Burston challenges the procedural and substantive reasonableness of his sentence.  Neither challenge has merit.

Burston contends that his sentence is procedurally unreasonable because the district court erred in:  (1) departing upward under § 4A1.3(a) to a criminal history category of VI, (2) increasing his offense level under § 2B3.1(b)(4)(b) for physically restraining the customers during the robbery, and (3) increasing his offense level under § 2B3.1(b)(2)(D) for using a dangerous weapon in the robbery. We need not review the merits of those contentions because the district court stated that it "would still make the variance up to the sentence imposed" regardless of the criminal history departure or the recommended guidelines range, and that "for what [Burston's] done in this and his record, anything less than 20 years is almost a gift."  So any error in calculating Burston's guidelines range was harmless.  See United States v. Overstreet, 713 F.3d 627, 639 n.15 (11th Cir. 2013); United States v. Barner, 572 F.3d 1239, 1248 (11th Cir. 2009) ("Where a district judge clearly states that he would impose the same sentence, even if he erred in calculating the

7

guidelines, then any error in the calculation is harmless."); United States v. Keene, 470 F.3d 1347, 1349 (11th Cir. 2006).

Burston also contends that his sentence was substantively unreasonable under the sentencing factors set out in 18 U.S.C. § 3553(a). Section 3553(a) requires district courts to impose sentences that are "sufficient, but not greater than necessary, to comply with the purposes" listed in that statutory provision. Id. Those purposes include the need to: reflect the seriousness of the offense, promote respect for the law, provide just punishment of the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. Id. § 3553(a)(2). Among other factors, the district court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the applicable guidelines range, and the need to avoid unwarranted sentencing disparities among similarly situated defendants. See id. § 3553(a)(1), (4), (6).

We apply an abuse of discretion standard in reviewing the district court's application of those factors. See United States v. White, 663 F.3d 1207, 1215 (11th Cir. 2011). Burston has the burden of proving that his sentence is substantively unreasonable. Id. at 1217. He does not claim that the district court's sentence "is grounded solely on one factor, relies on improper factors, or ignores relevant factors." United States v. Pugh, 515 F.3d 1179, 1194 (11th Cir. 2008). Instead he takes issue with the district court's conclusion that the facts in his case

8

justified a variance under the § 3553(a) factors. To prevail on his argument, he must instill us with "the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted).

Burston's argument, which is little more than a bare assertion that his sentence is unreasonable, does not instill such a conviction in us. His sentence is well below the statutory maximum of twenty-five years in prison. See United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008) (holding that a defendant's sentence was reasonable in part because it was well below the statutory maximum). The district court considered the § 3553(a) factors and made specific findings as to why the nature and circumstances of the offense, Burston's history and characteristics, the need for deterrence, and protecting the public from his future criminal conduct justified an upward variance from the guidelines range. The abuse of discretion standard gives district courts latitude to make such decisions. See Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 597 (2007). For those reasons, we affirm Burston's sentence.

**AFFIRMED.**

9